UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YOSEF ROTHMAN,

                             *Plaintiff*,

      v.

EXPERIAN INFORMATION SOLUTIONS,
INC., and TRANSUNION, LLC,

                             *Defendants*.

Case No. 24-CV-1080 (KMK)

<u>ORDER & OPINION</u>

<u>Appearances</u>:

Daniel Zemel Esq.
Elizabeth E. Apostola, Esq.
Zemel Law LLC
Patterson, NJ
*Counsel for Plaintiff*

Emma A. Kabuto, Esq.
Jones Day
New York, NY
*Counsel for Defendant Experian Info. Solutions, Inc.*

Jacqueline M Weyand, Esq.
Buchanan Ingersoll & Rooney PC
New York, NY

Andrew G. Hope, Esq.
Buchanan Ingersoll & Rooney PC
Philadelphia, PA

Melissa Bayly, Esq.
Buchanan Ingersoll & Rooney PC
Trenton, NJ
*Counsel for Defendant TransUnion, LLC*

KENNETH M. KARAS, United States District Judge:

Yosef Rothman ("Plaintiff") brings this Action against Experian Information Solutions, Inc. ("Experian), and TransUnion, LLC ("TransUnion"), (collectively, "Defendants"), seeking monetary damages for alleged violations of the Fair Credit Reporting Act ("FCRA"). (*See* Am. Compl. ¶¶ 1, 4, 5, 48–61 (Dkt. No. 64).)[1]  Defendants move to dismiss Plaintiff's Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Joint Mot. to Dismiss Pl.'s Am. Compl. ("Mot. to Dismiss" or the "Motion") (Dkt. No. 65).)  For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The factual information described herein is drawn from Plaintiff's Amended Complaint and the statutes cited therein and is accepted as true for purposes of deciding the Motion before the Court.  *See 1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 246 (2d Cir. 2024)

#### 1. CARES Act

On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act, or "CARES Act." ("the Act")  *See* Pub. L. 116–36, 134 Stat. 218 (2020).  Among other things, the Act imposed a "[f]oreclosure moratorium and consumer right to request forbearance," codified at 15 U.S.C. § 9056.  In relevant part, the Act set out the following forbearance requirements, which were in effect for the duration of the state of emergency imposed during the coronavirus pandemic:

---

[1] Unless otherwise indicated, all citations to record materials in this Action reflect the page numbers as generated by the Court's Electronic Case Filing system, which generally appear in the top-right-hand portion of the cited documents.

(b) Forbearance
> (1) In general
> During the covered period, a borrower with a Federally backed mortgage loan experiencing a financial hardship due, directly or indirectly, to the COVID-19 emergency may request forbearance on the Federally backed mortgage loan, regardless of delinquency status, by--
>> (A) submitting a request to the borrower's servicer; and
>> (B) affirming that the borrower is experiencing a financial hardship during the COVID-19 emergency.
> (2) Duration of forbearance
> Upon a request by a borrower for forbearance under paragraph (1), such forbearance shall be granted for up to 180 days, and shall be extended for an additional period of up to 180 days at the request of the borrower, provided that, at the borrower's request, either the initial or extended period of forbearance may be shortened.
> (3) Accrual of interest or fees
> During a period of forbearance described in this subsection, no fees, penalties, or interest beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract, shall accrue on the borrower's account.

15 U.S.C. § 9056(b). The Act also imposed requirements that loan servicers were to follow when they received a forbearance request. These were:

> (c) Requirements for servicers
>> (1) In general
>> Upon receiving a request for forbearance from a borrower under subsection (b), the servicer shall with no additional documentation required other than the borrower's attestation to a financial hardship caused by the COVID-19 emergency and with no fees, penalties, or interest (beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract) charged to the borrower in connection with the forbearance, provide the forbearance for up to 180 days, which may be extended for an additional period of up to 180 days at the request of the borrower, provided that, the borrower's request for an extension is made during the covered period, and, at the borrower's request, either the initial or extended period of forbearance may be shortened.
>> (2) Foreclosure moratorium
>> Except with respect to a vacant or abandoned property, a servicer of a Federally backed mortgage loan may not initiate any judicial or non-judicial foreclosure process, move for a foreclosure judgment or order of sale, or execute a foreclosure-related eviction or foreclosure sale for not less than the 60-day period beginning on March 18, 2020.

15 U.S.C. § 9056(c).  During the COVID-19 pandemic, certain credit agency reporting

requirements were modified as well.  These requirements were modified as follows.  In the case

of an "accommodation," defined as an "an agreement to defer [one] or more payments, make a

partial payment, forbear any delinquent amounts, modify a loan or contract, or any other

assistance or relief granted to a consumer who is affected by the coronavirus disease 2019

(COVID-19) pandemic during the covered period,"[2] an entity furnishing credit was subject to the

following requirement:

> [I]f a furnisher makes an accommodation with respect to 1 or more payments on a
> credit obligation or account of a consumer, and the consumer makes the payments
> or is not required to make 1 or more payments pursuant to the accommodation, the
> furnisher shall--
>> (I) report the credit obligation or account as current; or
>> (II) if the credit obligation or account was delinquent before the
>> accommodation--
>>> (aa) maintain the delinquent status during the period in which the
>>> accommodation is in effect; and
>>> (bb) if the consumer brings the credit obligation or account current
>>> during the period described in item (aa), report the credit obligation
>>> or account as current.

15 U.S.C. § 1681s-2(F)(ii).  According to Plaintiff, the Consumer Financial Protection Bureau

("CFPB") "made it clear that once the forbearance period ended, the mortgagee would not be

required to pay the full amount in one lump sum."  (Am. Compl. ¶ 11.)

    2. Plaintiff's Loan

    As alleged in Plaintiff's Amended Complaint, at some point Plaintiff entered into a

COVID forbearance plan with two companies that were servicing his two mortgage loans.  (Am.

---

[2] The covered period was defined as "120 days after March 27, 2020; or . . . 120 days
after the date on which the national emergency concerning the novel coronavirus disease
(COVID-19) outbreak declared by the President on March 13, 2020 under the National
Emergencies Act terminates." 15 U.S.C. § 1681s-2(f)(i)(II) (citation omitted).

Compl. ¶ 13.)  Each loan went into forbearance in March 2021 and each loan's forbearance period was set to expire in March 2022. (*Id.* ¶ 14.)  Then, a third-party servicer called LoanCare began to service Plaintiff's loans.  (*Id.* ¶ 12.)  LoanCare and the prior servicers (together, the "Data Furnishers") continued credit reporting the status of the loans to each of the Defendants each month.  (*Id.* ¶ 14.)

Plaintiff alleges that, based upon "testimony from . . . representatives of both TransUnion and Experian," both companies take the position that, "if [a] consumer misses" a payment at the conclusion of the forbearance period, so long as the consumer was "making timely payments before the forbearance period" on the loan, then, "the consumer should then be reported as 30 days late" on the loan.  (*Id.* ¶ 15.)  Plaintiff alleges that this was both an industry standard practice and that the CARES Act made no alteration to this ordinary practice.  (*Id.* ¶¶ 15–16.)

Despite this alleged practice and requirement, Plaintiff claims that when the loans came out of forbearance, in or around February 2022, LoanCare advised Plaintiff that he was 12 months delinquent on his obligations under both mortgage loans.  (*Id.* ¶ 17.)  The company demanded that he make full payment for all the months in forbearance in a single lump sum. (*Id.*)  The total lump sum payment, he alleges, would have totaled around $60,226.  (*Id.*) LoanCare allegedly told Plaintiff that he could be subject to foreclosure if he did not make the payment.  (*Id.*)

Plaintiff alleges that in February 2022, after he received this advisement from LoanCare, he attempted to make payments in accordance with his regular payment schedule rather than in a lump sum.  (*Id.* ¶ 18.)  He also offered, rather than the lump sum payment, to extend the loan, or pay an additional amount on top of the regular monthly obligations.  (*Id.*)  Nevertheless, Plaintiff claims, LoanCare rejected these offers.  (*Id.* ¶ 19.)  Instead, Plaintiff alleges that LoanCare

unlawfully started to report him as 180 days late on the mortgage loans when furnishing information to the credit reporting agencies.  (*Id.* ¶ 20.)  So, "both TransUnion and Experian began to publish reports listing Plaintiff as 120+ days delinquent from May 2022 and onward." (*Id.*)

Additionally, on his credit reports, "both Experian and TransUnion published scheduled monthly payments amounts" that reflected his ordinary payment obligations under the terms of his mortgage loans.  (*Id.* ¶ 21.)  Plaintiff alleges that these amounts, as listed on the credit report, reflect "what a consumer is required to pay on a monthly basis, as well as a demonstration of what the data furnisher will accept, each month." (*Id.*)  These amounts are presented alongside a field reflecting "the amount of actual payments made," which allow an individual reading the report to "discern how much a consumer's obligation is each month, and whether they satisfied that obligation in full, or partially."  (*Id.*)

Six months after Plaintiff left forbearance, he disputed the reporting to Defendants; Defendants received the disputes in September 2022.  (*Id.* ¶ 22.)  Plaintiff also informed Defendants that they should not consider LoanCare a reliable furnisher given its failure to abide by the forbearance procedures.  (*Id.*)

TransUnion, upon receipt of the dispute, "interpreted [it] as a dispute regarding the current status of the loans."  (*Id.* ¶ 23.)  The company allegedly construed Plaintiff's dispute as a request to have his loans "continue reporting in active forbearance."  (*Id.*)  Accordingly, it "focused its dispute investigation . . . on whether Plaintiff's account was in active forbearance during . . . September/October 2022."  (*Id.* ¶ 24.)  It also did not credit Plaintiff's assertion that LoanCare was not a reliable data furnisher.  (*Id.*)  To investigate, TransUnion "relied exclusively" on a form called the "ACDV exchange."  (*Id.* ¶ 25.)  Plaintiff alleges that this form

is used by a consumer reporting agency to direct a data furnisher to investigate a consumer's dispute. (*Id.*)  The reporting agency designates specific "dispute reason codes," and the furnisher relies on those reasons to conduct its investigation. (*Id.*)  So, "because TransUnion misinterpreted Plaintiff's dispute, TransUnion misdirected the nature of the investigation conducted by LoanCare to focus on whether there was a current forbearance or not." (*Id.*)  By conveying inadequate information in the ADCV, Plaintiff alleges, TransUnion's action prevented sufficient responses from LoanCare by leading the furnisher to focus on the wrong information. (*Id.* ¶ 44.)  According to Plaintiff, TransUnion did no further investigation. (*Id.* ¶ 26.)

Experian, upon receipt of the dispute, "focused its . . . efforts on the previous account status and history for the two loans." (*Id.* ¶ 27.)  It did not "focus . . . on the fact that Plaintiff attempted [unsuccessfully] to make payments," or on the fact that Plaintiff "should not [have] be[en] reported as 180 days late" upon leaving forbearance. (*Id.* ¶ 28.)  Like TransUnion, Experian failed to consider that LoanCare was not a reliable data furnisher. (*Id.*)  Experian also relied on the ACDV exchange and conducted no further investigation. (*Id.* ¶ 29.)  Plaintiff alleges that Experian did not convey adequate information in the ADCV to generate sufficient responses from LoanCare. (*Id.* ¶ 44.)

Finally, Plaintiff claims that fundamental flaws in the ACDV form prevent the exchange from handling the type of dispute at issue in this Action. (*Id.* ¶ 30.)  The form reports the status of an account for the current month; it includes the current and historical status of the account, which each appear on a different portion of the ACDV. (*Id.* ¶¶ 31–32.)  Plaintiff's Amended Complaint is not the model of clarity, but it seems that he claims that the historical status section does allow indication that the account "was in forbearance, or recently out of forbearance, during a specific historical month." (*Id.* ¶ 33.)  There is no way to tell whether, in a past month, the

7

account was in forbearance or how long it had been out of forbearance.  (*Id.* ¶ 35.)  Based on these issues, Plaintiff alleges that when he did not make a payment in April 2022 (due to the creditor's failure to accept his payment), the form should have indicated that there was either no data available, or that he was current, or that he was 30 days late on payment, or somehow indicated the number of days he was late from the date the forbearance ended.  (*Id.* ¶¶ 36–37.)

Plaintiff also alleges that Defendants could have taken additional investigatory steps, such as confirming whether Plaintiff was in COVID forbearance during the relevant months, as each knew he was in forbearance for that period.  (*Id.* ¶¶ 40–41.)  Or, they could have relied on their internal forbearance reporting to determine that the delinquencies could not be accurate.  (*Id.*)  They also could have asked the data furnishers whether they refused Plaintiff's payments as described in the dispute letter.  (*Id.* ¶ 42.)  Plaintiff alleges that this inquiry would have led to the conclusion that he should not have been reported late and did not need to make a lump sum payment.  (*Id.*)

B.  Procedural Background

Plaintiff initiated this Action in the New York Supreme Court for the County of Rockland.  (*See* Notice of Removal 1 (Dkt. No. 1).)  The initial complaint named as defendants TransUnion, Experian, and Equifax.  (Compl. 3 (Dkt. No. 1-1).)  The Action was removed to this Court on February 14, 2024.  (*See* Notice of Removal.)  Experian answered the initial complaint on March 15, 2024; Trans Union answered on March 29, 2024. (Answer (Dkt. No. 7); Answer (Dkt. No. 12).)  On June 16, 2025, Plaintiff's initial claims against Equifax were dismissed with prejudice.  (*See* Stipulation of Dismissal (Dkt. No. 59).)

On July 7, 2025, Plaintiff filed an Amended Complaint.  (*See* Am. Compl.)  In his Amended Complaint, Plaintiff asserts two claims under the Fair Credit Reporting Act, 15 U.S.C.

§ 1681 et seq. ("FCRA"): one against Experian and one against TransUnion.  (*Id.* ¶¶ 48–61.)

Defendants filed a Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6) on July

29, 2025.  (*See* Mot. to Dismiss.)  Plaintiff filed his Opposition Brief on September 12, 2025.

(*See* Response in Opp'n to Mot. ("Opp'n") (Dkt. No. 68).)  Defendants' Reply was filed on

September 29, 2025.  (Reply Mem. of Law ("Defs.' Reply") (Dkt. No. 73).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citations, quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement."  *Id.* (quotation marks and alteration omitted).

Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the

speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the

line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556

U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted).

B. Analysis

    1. Elements of a Claim under 15 U.S.C. §§ 1681e(b), 1681i

Plaintiff raises claims under two sections of the FCRA. The first, 15 U.S.C. § 1681e(b) provides that, "[w]henever a consumer reporting agency prepares a consumer report[,] it shall follow reasonable procedures to assure maximum possible accuracy of the information

10

concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).  The second, 15 U.S.C. § 1681i, requires a consumer reporting agency, upon notification by a consumer—either directly or indirectly—of a dispute as to the accuracy of any item of information contained in his file, to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate" within thirty days of notification. 15 U.S.C. § 1681i(a)(1)(A); *see also Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ("If a dispute is filed with the agency, both the agency and the furnisher of that information have a duty to reasonably investigate and verify that the information is accurate.").

To state a claim under either Section 1681(e)(b) or Section 1681i, as a threshold matter, a plaintiff must plead "that the challenged report is inaccurate."  *Sessa v. TransUnion, LLC*, 74 F.4th 38, 42 (2d Cir. 2023) (citation omitted); *see Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023) (reasoning that, "to prevail on a section 1681e claim against a consumer reporting agency, it is necessary for a plaintiff to establish, among other things, that a credit report contains an inaccuracy" (citation omitted)); *Pirzinger v. Trans Union LLC*, No. 25-CV-1760, 2025 WL 3206740, at *3 (S.D.N.Y. Nov. 17, 2025) (explaining that, regardless of which claim a plaintiff asserts, the "the threshold question is whether the disputed credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedure is necessary."  (citations and quotation marks omitted)); *Finman v. TransUnion, LLC*, No. 23-CV-3537, 2025 WL 3451847, at *4 (E.D.N.Y. Aug. 15, 2025) (report and recommendation) ("The first element of the claim [under Section 1681e(b)] is

11

reporting of an inaccuracy . . . .");[3] *Hossain v. Portfolio Recovery Assocs.*, 693 F. Supp. 3d 358, 362 (E.D.N.Y. 2023) ("In considering a challenge under § 1681e(b) or § 1681i, the threshold question is whether the disputed credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedure is necessary." (citation and quotation marks omitted)); *see also Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (recognizing that, while 15 U.S.C. § 1681i "does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts . . . have imposed such a requirement."); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) ("[T]he weight of authority in other circuits indicates that without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail.").

Under binding Second Circuit precedent, an inaccuracy is a piece of information that is "patently incorrect or . . . misleading" based on "objectively and readily verifiable information." *Mader*, 56 F.4th at 269 (citation & quotations omitted). At the pleading stage, to demonstrate an "inaccuracy," the plaintiff must provide allegations that support the conclusion that the credit report is "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Khan v. Equifax Information Services, LLC*, No. 18-cv-6367, 2019 WL 2492762, at *3 (E.D.N.Y. June 14, 2019) (collecting cases); *see also Mader*, 56 F.4th at 269 (same); *Wenning v. On-Site Manager, Inc.*, No. 14-CV-9693, 2016 WL 3538379, at *9 (S.D.N.Y. June. 22, 2016) (same).

---

[3] The Court notes that the defendants in *Finman* objected to the Report and Recommendation cited here. (*See* Dkt. No. 68 (Dkt. 18-CV-6367).) Their objections remain pending before the court. (*See generally* Dkt. (Dkt. 18-CV-6367).)

Where a plaintiff alleges facts sufficient to support inaccuracy, to state a claim under Section 1681e(b), the plaintiff must also plead that the consumer reporting agency was either negligent or willful, based on a failure to follow reasonable procedures to assess the accuracy of the report, injury, and that the negligence or willfulness caused the injury. *See Finman*, 2025 WL 3451847, at *3 (stating elements of the claim); *Watson v. Caruso*, 424 F. Supp. 3d 231, 244 (D. Conn. 2019) (same); *see also Adams v. Nat'l Eng'g Serv. Corp.*, 620 F. Supp. 2d 319, 330 (D. Conn. 2009) (same). To state a claim for noncompliance with reinvestigation obligations under Section 1681i, in addition to inaccuracy, the plaintiff must also plead facts sufficient to support the conclusion that the consumer reporting agency failed to perform the requisite reasonable reinvestigation of the disputed information. *See Gross v. Priv. Nat'l Mortg. Co.*, 512 F. Supp. 3d 423, 426 (E.D.N.Y. 2021). "[T]he parameters of a reasonable investigation will . . . depend on the circumstances of a particular dispute," with "a number of factors . . . determin[ing] the extent" of the appropriate reinvestigation. *Jones v. Experian Info. Sols., Inc.*, 982 F. Supp. 2d 268, 273 (E.D.N.Y. 2013). It may be necessary for the credit reporting agency to "verify the accuracy of its initial source of information," including "whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable" and "the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer." *Id.*

2. Accuracy Under the FCRA

Defendants move to dismiss exclusively on the theory that that Plaintiff has not alleged a cognizable inaccuracy. (Supplement Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") 11 (Dkt. No. 65-1).) Namely, Defendants argue that Plaintiff does not deny that his outstanding

13

debt existed and went unpaid. (*Id.* at 12–14.) Moreover, they assert that the alleged inaccuracy is not "objectively and readily verifiable," and therefore cannot establish an FCRA violation. (*Id.* at 14–17.) Defendants further claim that the question whether Plaintiff was properly required to pay a lump sum is an unresolved legal dispute between Plaintiff and another entity, LoanCare, that is not objectively and readily verifiable. (*Id.* at 14, 16.) Plaintiff responds that CFPB guidance instructed that the lump-sum collection activity was illegal, making it unquestionably false and misleading, (Opp'n 13–14), and, in any event, Defendants ignore the possibility that this activity was "technically correct but misleading" in violation of the FCRA, (*id.* at 14). Plaintiff contends further that, in any event, Defendants appear to concede that Plaintiff was no more than 30 days delinquent, and so his account should not be reporting as 180 days delinquent. (*Id.* at 18.) Finally, he says this error was readily verifiable. (*Id.* at 18–22.)

The Second Circuit has explained that "there is no bright-line rule providing . . . that only purely factual or transcription errors are actionable under the FCRA. Rather, in determining whether a claimed inaccuracy is potentially actionable under section 1681e(b), a court must determine, *inter alia*, whether the information in dispute is 'objectively and readily verifiable.'" *Sessa*, 74 F.4th at 43. In *Sessa*, the court held that there was "no threshold inquiry under the FCRA as to whether any purportedly inaccurate information is legal or factual in nature." *Id.* Still, there is no requirement that a credit reporting agency "adjudicate intricate issues, legal or otherwise, to ensure the accuracy of a consumer's credit report." *Goldenberg v. TransUnion, LLC*, No. 23-CV-9514, 2025 WL 2200486, at *3 (E.D.N.Y. Aug. 1, 2025) (quoting *Hossain*, 693 F. Supp. 3d at 363). Instead, the onus on a credit reporting agency is that it consider "straightforward, objectively and readily verifiable information when conducting [its]

14

investigation[] under the FCRA to ensure accurate credit reports." *Id.* (quoting *Hossain*, 693 F. Supp. 3d at 363).

In the aftermath of *Sessa*, cases appear to distinguish between inaccuracies that, although predicated upon a legal question, are readily verifiable from the plain language of a document or statute, and those that involve some further level of analysis and factual development. For instance, in *Sessa*, the plaintiff was subject to the terms of a lease that gave him an "option to purchase" the leased vehicle at the end of the term—but no obligation to purchase. *Sessa*, 74 F.4th at 41. Nevertheless, the information reported to the credit reporting agency reflected that Plaintiff had a large payment, $19,444.07, that would be due at the end of the lease term. *Id.* The lease's clear language gave plaintiff an *option*, but the payment was reported as an *obligation*. *See id.* at 43 n.7. So, too, have courts concluded that there is an actionable inaccuracy when the clear effect of a bankruptcy discharge order is misreported—this type of inaccuracy is "objectively and readily verifiable from the application of the law concerning debts and bankruptcy discharge and to the facts of a plaintiff's case." *Lamando v. Rocket Mortg.*, No. 23-CV-147, 2024 WL 264034, at *10 (N.D.N.Y. Jan. 24, 2024). In other words, where the "legal question is sufficiently settled so that the import on a particular debt is readily and objectively verifiable," it may be the case that the "implications of that decision [should] be reflected in credit reports." *Mader*, 56 F.4th at 271.

In contrast, where there is a possibility that a debt *may* become time barred due to a statute of limitations—but where that statute of limitations, which is an affirmative legal defense, could be waived or restart—courts have held that the obligation to pay the debt is not objectively and readily verifiable. *See Hossain*, 693 F. Supp. 3d at 364 ("Experian was not required to report that the statute of limitations may have expired. The statute of limitations . . . is an

affirmative legal defense that a consumer may decide to . . . waive.  Even if the statute of limitations has expired, it may restart depending on certain actions by the debtor." (citations omitted)); *Sanchez v. JPMorgan Chase Bank, N.A.*, No. 22-CV-1396, 2023 WL 6049978, at *4 (D. Conn. Sept. 15, 2023) ("Other courts, confronted with the question whether the FCRA requires furnishers and CRAs to report the expiration of a statute of limitations on a debt, have concluded that there is no such obligation." (citations omitted)).  Where the inquiry is within the purview of "a court, and not a CRA or any other entity," to make the legal determination in question, a claim is "not cognizable under the FCRA."  *Hossain*, 693 F. Supp. 3d at 364.  And where there "is nothing in the relevant statutes or applicable caselaw that requires a furnisher of information" to make certain reports, but the plaintiff's challenge is instead a legal argument that "furnishers of information are required to report" the information, the asserted claim "is not cognizable under the FCRA."  *Lamando*, 2024 WL 264034, at *10.  In other words, the credit reporting agency has no obligation to "resolve unsettled legal questions."  *Mader*, 56 F.4th at 271.

Courts have also held that in most cases, where a plaintiff does not dispute that payments to lenders were late—even where the plaintiff has attempted but failed to make payments on that overdue obligation—there exists no "inaccuracy" actionable under FCRA.  *Goldenberg*, 2025 WL 2200486, at *4; *see also Hossain*, 693 F. Supp. 3d at 364 ("Even assuming that the validity of the statute of limitations was objectively and readily verifiable, which it was not, [the p]laintiff's credit report is not inaccurate or materially misleading [because the statute of limitations does not extinguish the underlying debt].");  *cf. Lamando*, 2024 WL 264034, at *10 ("Rocket Mortgage accurately reported that [the p]laintiff's mortgage had been discharged in bankruptcy—a fact [the p]laintiff does not dispute.");  *Mader*, 56 F.4th at 269 ("There is no

16

bankruptcy order explicitly discharging this debt.  [The furnisher] continued to treat the debt as outstanding following [the plaintiff's] bankruptcy.  And, for that matter, so did [the plaintiff].").  *But see Regalado v. Experian Info. Sols., Inc.*, No. 22-CV-1309, 2023 WL 6393222, at *4–5 (D. Nev. Sept. 30, 2023) (concluding that, although the plaintiff "admit[ted] that a missed payment occurred when the funds for his . . . loan payment did not get withdrawn from his bank account," where the lender "admitted to the processing error and expressly represented to him that the missed payment would not be reported and would not impact his credit report," but nevertheless "shared missed payment information with the [credit reporting agencies], which [negatively] impacted [the p]laintiff's credit," the plaintiff had alleged an inaccuracy).

With this distinction further fleshed out, the Court considers whether any of Plaintiff's asserted bases for an "inaccuracy" in his report—the furnisher's requirement that he make a lump sum payment, the number of days that the payments were marked overdue, and the furnisher refusing to accept partial payments but the reports nevertheless suggesting that Plaintiff was subject to monthly obligations, rather than a lump sum obligation—is sufficient to allege an "inaccuracy" under the FCRA.

### a. Lump Sum Payment

At least as alleged in his Amended Complaint, Plaintiff has not demonstrated that the legal questions whether he could be obligated to make his mortgage payments in one lump sum, is sufficiently settled to allow a FCRA claim to lie.  As support for the conclusion that the "lump sum" payment was unlawful, Plaintiff alleges that the "CFPB made it clear that . . . the mortgagee would not be required to pay the full amount in one lump sum" once the loan came

out of forbearance.[4]  (Am. Compl. ¶ 11; *see also id.* ¶ 17 (alleging the "lump sum payment demands were in contravention to LoanCare's abilities under CFPB instruction").)  In his opposition brief, Plaintiff cites as support the CFPB and Conference of State Bank Supervisors *Consumer Relief Guide* issued in May 2020.  (Opp'n 13.)  This document, however, imposes no such requirement: instead, it says "[a]t the end of [the] forbearance period, [the borrower] and [the] servicer will determine how [the borrower] will repay any missed payments or deficiencies related to reduced payments, especially in [the borrower's] escrow account.  In most cases, [the borrower] will be given multiple options for repaying the forbearance; a lump-sum repayment will typically not be the only option."  *See* Conf. of State Bank Supervisors & Consumer Fin. Prot. Bureau, *Consumer Relief Guide – Your Rights to Mortgage Payment Forbearance and Foreclosure Protection Under the Federal CARES Act* (May 2020), https://files.consumerfinance.gov/f/documents/cfpb_csbs_consumers-forbearance-guide_2020-05.pdf [https://perma.cc/QP47-D89X] ("Consumer Relief Guide").  Not only does this language fall short of being "sufficiently settled so that the import on a particular debt is readily and objectively verifiable," as required to support an "inaccuracy" under the FCRA, *Mader*, 56 F.4th

---

[4] Without additional factual allegations, the Court need not credit this assertion; it is a conclusory statement and, for the most part, advances a legal conclusion.  *See, e.g.*, *Brooks v. Higher Educ. Loan Auth. of the State of Missouri (Mohela)*, No. 25-CV-844, 2026 WL 161196, at *2, 4 (N.D.N.Y. Jan. 21, 2026) (explaining, in a FCRA case, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and stating the court could not "credit [the p]laintiff's legal conclusion that she initiated the disputes required by [the applicable] FCRA sections . . . on a motion to dismiss" (citation and quotation marks omitted)); *Jones v. City of New York*, No. 19-CV-10424, 2021 WL 4482150, at *4 (S.D.N.Y. Sept. 30, 2021) ("Plaintiff does not state which policies or practices of the City are inadequate, and does not draw a cognizable nexus between the purported inadequacy and any constitutional violation.  Plaintiff merely pleads threadbare recitations of the elements of a *Monell* claim to the effect that the City 'had de facto policies' which 'were a direct and proximate cause of the unconstitutional conduct.'  The Court need not credit Plaintiff's legal conclusions couched as facts." (citations omitted)).

at 271, but this language also falls short even of definitively imposing a bar on lump sum repayments, *see* Consumer Relief Guide ("In *most* cases . . . a lump-sum repayment will . . . not be the only option." (emphasis added)).  And while Plaintiff alleges generically that the CFPB forbade lump sum payments, without additional allegations as to the nature of the CFPB's activity in this area, the Court cannot determine that the legal question was so clearly decided such that it can form the basis of an FCRA claim.  Indeed, to the extent that any courts have considered the question, it appears that they, too, have concluded that "nothing in the CARES Act bars a loan servicer from requiring repayment in full at the end of the forbearance period." *Samaan v. Cenlar FSB*, No. 20-CV-1887, 2022 WL 866100, at *4 (E.D. Cal. Mar. 23, 2022) (characterizing the CARES Act repayment options in the context of a fraud claim).  Accordingly, as to the requirement that the payments be made in one lump sum, Plaintiff has not alleged any actionable inaccuracy.

### b. Days Marked Overdue

Next, the Court considers Plaintiff's allegation that, at the end of the forbearance period, his payments should have been marked "overdue" only as measured from the last day (i.e. the end) of the forbearance, rather than from the first day (i.e. the beginning).  Generally, a dispute as to the length of time a payment has been overdue is a factual dispute, not a legal one.  *See Alston v. Truist Bank*, No. 22-CV-2974, 2025 WL 2784705, at *9 (D. Md. Sept. 30, 2025) (concluding, at summary judgment stage, that there was no factual basis to conclude that date of delinquency was inaccurately reported pursuant to the defendant's "general delinquency reporting policy," and that at least one of the plaintiff's argument on this front had been "based on a misunderstanding of [a defendant's] policy with respect to reporting 30-day delinquencies"); *McCracken v. Ally Bank*, No. 25-CV-01881, 2025 WL 2374831, at *2 (C.D.

Cal. July 14, 2025) ("While it may be undisputed that [the p]laintiff's payments were technically late, [the p]laintiff argues that the CRA [d]efendants inaccurately reported the number of days which the payments were late by.  The CRA [d]efendants reported [the p]laintiff's payments as 30 days late, however, [the p]laintiff alleges that he was never 30 days late on any of his payments to Ally Bank. . . . Accordingly, the Court finds that Plaintiff makes a prima facie case under the FCRA . . . ." (citations omitted)).  Here, Plaintiff alleges that the regular practice within the industry is not to include the period of forbearance when calculating the time that a loan has been delinquent.  (Am. Compl. ¶ 15.)  Plaintiff claims that nothing in the CARES Act alters this practice (an allegation that appears consistent with the relevant statutory text), and that Defendants treat COVID forbearances identically to any other forbearance.  (*Id.* ¶ 16.)  Indeed, Plaintiff alleges that "Experian and TransUnion's corporate representative" provided testimony to support the conclusion that each company believes a code indicating non-payment for 30 days "is the proper code under these circumstances."  (*Id.* ¶ 36.)  Accordingly, and unlike Plaintiff's allegations about the lump-sum payments, there is no basis to conclude that the CARES Act introduced a novel legal question, the answer to which is not "readily ascertainable," into the determination of the date of delinquency.  *See Mader*, 56 F.4th at 270.  The Act has not alchemized this ascertainable, factual question into a legal dispute that requires "bespoke attention" to resolve.  *Id.*

As Plaintiff identifies, Defendants did not address this issue squarely in their Memorandum of Law supporting their Motion to Dismiss, and so any argument that these allegations do not state a claim have arguably been waived at this stage.  (Opp'n at 18 (noting that "nowhere within Defendants' Motion to Dismiss do they argue against [the] theory of inaccuracy" premised on the number of days the payments were marked overdue (emphasis

20

omitted)); *see also* Defs.' Mem.)  Nevertheless, in their Reply, Defendants submit that their reporting was "factually accurate" because Plaintiff had not made a payment in more than 180 days.  (Defs.' Reply 8.)  But this conclusion presupposes that the delinquency period is, under Defendants' own procedures, measured from the date the forbearance began, rather than the date which it ended.  And in his Amended Complaint, Plaintiff has alleged just the opposite.  (Am. Compl. ¶ 36.)  At the Motion to Dismiss stage, the Court must credit Plaintiff's allegations. Accordingly, Plaintiff has alleged an "inaccuracy" under the meaning of FCRA that is "readily ascertainable" as to the date his loan became delinquent.

Attempting to resist this conclusion, Defendants rely on *Llewellyn v. Carrington Mortgage Servs., LLC*, No. 21-CV-850, 2022 WL 22902518 (W.D. Mo. Apr. 29, 2022), in their Reply Brief.  To start, the Court could and does reject this argument on the basis that it was not advanced until Defendants' Reply Brief.  *See United States v. George*, 779 F.3d 113, 119 (2d Cir. 2015) ("We generally treat arguments raised for the first time in a reply brief as waived."); *Owens v. Perez*, No. 17-CV-657, 2019 WL 13389157, at *2 n.4 (D. Conn. Feb. 13, 2019) ("It is well settled that the court need not consider arguments first raised in a party's reply brief which afford no opportunity for response from the opposing party." (quotation marks and citations omitted)). (*See* Dkt. No. 86 (17-CV-657 Dkt.) (adopting report and recommendation).)  In the alternative, the Court could and would reject reliance on this case, as it is from outside the Second Circuit, and its persuasive value is limited in that it is interpreting another circuit's FCRA precedent.  *See, e.g.*, *Ziboukh v. Whaleco, Inc.*, 795 F. Supp. 3d 349, 389 n.14 (E.D.N.Y. 2025) ("As a preliminary matter, the [c]ourt is not bound by out-of-circuit decisions, and [the out-of-circuit decision] applied California state contract law rather than New York state contract law.").

But even considering the holding of *Llewellyn*, there are reasons to distinguish that decision from the Action before the Court.  Namely, the allegations in *Llewellyn* differ from the facts alleged here: in *Llewellyn*, the complaint alleged that the plaintiff had entered into a formal, written forbearance agreement with the defendant.  *See* 2022 WL 22902518 at *5 ("[The defendant] is not in the best position as a [credit reporting agency] to investigate the terms of the forbearance agreement underlying the claim.").  Accordingly, the district court concluded that "some interpretation of the terms of the forbearance agreement" would be "necessary to determine the applicability of the FCRA accommodation mandate."  *Id.*  But even assuming that the forbearance here occurred pursuant to a formal agreement, (*see* Am. Compl. ¶ 13 (describing Plaintiff's entering into a COVID forbearance plan with the entities that had serviced his loan prior to LoanCare)), this would not end the inquiry under controlling Second Circuit precedent.  *See Sessa*, 74 F.4th at 43 (clarifying that there is "no threshold inquiry under the FCRA as to whether any purportedly inaccurate information is legal or factual in nature").  Rather, the inquiry would turn on whether it was plainly obvious from the terms of the forbearance agreement as to the timing of subsequent reporting.  *See id.*  And without the terms of any such agreement before the Court, there would be no basis to conclude that this allegation was not actionable under the FCRA.

### c. Failure to Accept Non-Lump-Sum Payments But Continued Indication of Monthly Payment Accounts on Reports

As mentioned, Plaintiff also alleges that LoanCare would not accept any amount of payment short of the lump sum.  (Am. Compl. ¶ 18.)  Nevertheless, Plaintiff alleges that each report listed his monthly obligations as $1,656 and $3,362 on each account; this practice, he claims, gave the impression that LoanCare would accept these amounts each month.  (*Id.* ¶¶ 12,

21.)  The Court concludes, however, that this practice was not "inaccurate" such that it was actionable under FCRA.

Courts have routinely rejected claims against credit reporting agencies based on the alleged misconduct of furnishers where that alleged misconduct did not result in inaccurate information being reported on Plaintiff's account.  "For claims brought against credit reporting agencies, such as Defendants, culpability and fault is simply irrelevant in answering the threshold question at issue—whether the credit reporting agency reported an inaccuracy." *Goldenberg*, 2025 WL 2200486, at *4 (citation and internal quotation marks omitted) (alterations adopted).  Plaintiff's allegations are quite similar to cases involving debts where the statute of limitations had expired which, as described above, are not actionable under the FCRA:  the fact of the forbearance "does not extinguish [Plaintiff's] debt or eliminate the possibility that []he might be obligated to pay it."  *Sanchez*, 2023 WL 6049978, at *4.  Plaintiff's claims do not involve a monthly amount that he was "not obligated" to pay.  *See Ostreicher v. Chase Bank USA, N.A.*, 2020 WL 6809059, at *5 (S.D.N.Y. Nov. 19, 2020).  And he does not contest that each month he was obligated to pay an additional $1,656 and $3,362 on each account.  (*See* Am. Compl. ¶¶ 12, 21.)  In other words, whether or not LoanCare *should* have accepted the non-lump-sum payments that Plaintiff allegedly offered—which, as described above, involves an unresolved question of law under the CARES Act—it *did not* accept those payments.[5]  So, as

---

[5] This fact differentiates Plaintiff's allegations from those in *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d 1066 (D. Or. 2011), an out-of-circuit case cited in his opposition brief.  In that case, the plaintiffs alleged that the account "was always inaccurately reported because they never missed a required payment and consistently paid the amount owed," but, viewing the facts in the light most favorable to plaintiffs, they entered a modification agreement pursuant to which they consistently made the required payments, before they eventually received a statement correcting the delinquent information.  *Id.* at 1071–73.

alleged in Plaintiff's complaint, the entire amount remained in arrears, and he continued to accrue additional monthly payments of $1,656 and $3,362.

Even though these facts do not allege an "inaccuracy," as Plaintiff argues, the Court must also consider whether these facts, "while technically accurate," are nevertheless materially misleading and therefore actionable. The FCRA permits a cause of action for incomplete but technically accurate information that is materially misleading. *See Shimon v. Equifax Info. Servs. LLC*, 994 F.3d at 88, 91 (2d Cir. 2021) ("[A] credit report is inaccurate either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect."). To support a claim based on allegations that a credit report is materially misleading, the plaintiff must "establish that the information provided by the consumer reporting agency is open to an interpretation that is directly contradictory to the true information." *Goldenberg*, 2025 WL 2200486, at *5 (alteration adopted) (quoting *Gross* 512 F. Supp. 3d at 426). Plaintiff has not done so here: there is no interpretation of Plaintiff's late payment that is "directly contradictory to the true information," namely, that he had not paid LoanCare, that he owed back payments, and that he would continue to accrue his monthly payment obligations. While it is possible that Plaintiff's allegations could state a claim against the furnisher, *see Hauge v. AmeriHome Mortg. Co.*, 565 F.Supp.3d 1, 7 (D. Mass. 2021) ("[I]t is undisputed that the plaintiff attempted to submit the payments on time. Thus, the defendant's report that the plaintiff's payments were late, without explanation, could have been expected to have an adverse effect."), or might state a claim in combination with an admission by the lender that its reports were inaccurate and that its error had been relayed to the credit reporting agency, *see Regalado*, 2023 WL 6393222, at *4, they do not state a claim against the credit reporting agencies without more facts that have not been alleged here. *See also Goldenberg*, 2025 WL

24

2200486, at *5 ("Defendants' 'failure to expound on an otherwise accurate report entry is not the type of misleading omission sufficient to constitute an inaccuracy under the FCRA.'" (quoting *Spira v. TransUnion, LLC*, 2024 WL 2221662, at *5) (S.D.N.Y. May 16, 2024)); *Tuttobene v. Trans Union, LLC*, No. 19-CV-1999,2021 WL 2188232, at *2 (D. Nev. May 28, 2021) (holding that the plaintiff's § 1681i(a) claim arising from a credit reporting agency's refusal to alter a reported undisputedly late payment caused by the creditor's "computer system reject[ing] [the plaintiff's] payment" failed "as a matter of law" because the agency's reporting was neither "inaccura[te]" nor "materially misleading" because the creditor maintained its position that the plaintiff's payment was delinquent and credit reporting agencies are "not in a position to adjudicate [a] dispute between a consumer and a furnisher of information").

While Plaintiff cites a number of cases purportedly reaching the contrary conclusion, (*see* Opp'n 14), the Court finds none persuasive.  Indeed, one recent district court decision rejects reliance on the exact trilogy of cases relied on by Plaintiff, on the grounds that "[i]n addition to being out-of-circuit, these cases involve suits against furnishers, not credit reporting agencies." *Goldenberg*, 2025 WL 2200486, at *5; *see also Spira*, 2024 WL 2221662, at *4 (explaining that the same trilogy of cases "are distinguishable as they all involve a consumer filing suit against a furnisher instead of a consumer reporting agency").  To the extent that Plaintiff has cited cases involving claims asserted against credit reporting agencies, the only in-circuit case he has cited is *Finman*.  There, the court acknowledged that "not all courts agree that the reporting agency should be granted a motion to dismiss . . . where the lender's error is alleged," *Finman*, 2025 WL 3451847, at *6.  However, that court cited as support for this proposition only *Regalado*—a case that involved an admission by the furnisher that its reports were inaccurate and the furnisher's representation that this error had been relayed to the credit reporting agency, but an inaccuracy

25

nevertheless appeared on the plaintiff's report. *See Regalado*, 2023 WL 6393222, at *4. This dictum does not suggest that an action, like this one, that involves allegations of wrongdoing by the credit furnisher that precluded the Plaintiff from paying would, without the other facts present in *Finman* (namely, that plaintiff had indeed made payments during the pendency of the allegedly late period), sustain a claim under the FCRA. *See also Silber v. TransUnion, LLC*, 2025 WL 588620, at *4 (S.D.N.Y. Feb. 24, 2025) ("[The p]laintiff argues that reporting missed payments is misleading because he incurred adverse notations on his credit file because of his mistaken expectation that autopayments would continue. However, the CRA [d]efendants did not misrepresent his late payments.").[6]

Accordingly, the Court finds the authority introduced by Plaintiff on this point unpersuasive. Defendants are correct that, where Plaintiff admittedly did not make payments to the furnisher, and where he did, in fact, owe the amount stated on his report, he has not alleged an inaccuracy on the facts described here.

### III.  Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss is granted in part and denied in part. To the extent the Court has dismissed part of Plaintiff's claim, the dismissal of

---

[6] Plaintiff also submitted a Rule 28(j) Letter bringing the case *Oestreicher v. Flagstar Bank*, No. 23-CV-239, 2025 WL 3755609 (E.D.N.Y. Sept. 29, 2025), to the Court's attention. (Letter from Daniel Zemel, Esq. to Court (Dec. 1, 2025) (Dkt. No. 75)); *see also* Letter from Melissa J. Bayly, Esq. to Court (Jan. 21, 2025) (Dkt. No. 76).) However, the Court readily concludes that the facts of *Oestreicher* are distinguishable from those alleged in this Action. There, the plaintiff submitted evidence that her loan was in an *active* COVID forbearance, but that a furnisher inaccurately reported her account as delinquent during each month of forbearance. *Oestreicher*, 2025 WL 3755609, at *2. The Court determined that the plaintiff had established an "inaccuracy" as a matter of law. *Id.* at *12. The difference here is obvious: Plaintiff has not alleged an inaccuracy based on the reported status of his loan *during* the forbearance period, only after the forbearance concluded. (*See generally* Am. Compl.)

the claim is without prejudice because this is the first adjudication of Plaintiff's claim on the merits.  If Plaintiff wishes to file an amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within thirty days of the date of this Opinion & Order.  *See Tyson v. Town of Ramapo*, No. 17-CV-4990, 2019 WL 1331913, at *19 (S.D.N.Y. Mar. 25, 2019) ("The Court will afford Plaintiff an opportunity to amend if, after reviewing this Order and Opinion and the law therein, he still believes that he can plausibly state claims against Defendants." (alteration adopted) (citation omitted)).  There will be no extensions.

Plaintiff is further advised that an amended complaint will completely replace, not supplement, the now-dismissed Complaint.  Any amended complaint must therefore contain all of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider.  If Plaintiff fails to timely file an amended complaint, the dismissed claims may be dismissed with prejudice.  *See Markatos v. Citibank, N.A.*, 760 F. Supp. 3d 70, 87 (S.D.N.Y. 2024).

The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 65.

SO ORDERED.

Dated:   March 30, 2026
        White Plains, New York

KENNETH M. KARAS
United States District Judge

27